UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**CYNTOIA DENISE BROWN** ]
    Petitioner, ]
     ]
v. ] No. 3:15-cv-0712
     ] Senior Judge Nixon
**VICKI FREEMAN, Warden** ]
    Respondent. ]

**M E M O R A N D U M**

The petitioner is an inmate at the Tennessee Prison for Women in Nashville. Through counsel, she brings this action pursuant to 28 U.S.C. § 2254 against Vicki Freeman, Warden of the facility, seeking a writ of habeas corpus.

**I. Background**

On August 25, 2006, a jury in Davidson County found the petitioner guilty of first degree premeditated murder, first degree felony murder, and especially aggravated robbery. Docket Entry No. 14-16 at pg. 97. Because the murder convictions involved a single killing, the trial court merged the murder convictions. *Id.* at pg. 99. For her crimes, the petitioner received a life sentence for murder along with a concurrent sentence of twenty (20) years for especially aggravated robbery. Docket Entry No. 2 at pgs. 39-44.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the murder conviction and sentence. However, the petitioner had been charged with aggravated robbery rather than especially aggravated robbery. As a result, the case was remanded back to the trial court "for entry

1

of a judgment of conviction for aggravated robbery and a sentencing hearing as to that offense." Docket Entry No. 14-23.

On remand, the petitioner received a sentence of eight years in prison for aggravated robbery. Docket Entry No. 14-26 at pg. 57. The Tennessee Supreme Court later denied the petitioner's Rule 11 application for further review. Docket Entry No. 14-25.

In August, 2010, the petitioner filed a *pro se* petition for state post-conviction relief in the Criminal Court of Davidson County. Docket Entry No. 14-26 at pgs. 58-78. Following the appointment of counsel, an amendment of the petition and an evidentiary hearing, the trial court denied the petitioner post-conviction relief. Docket Entry No. 1-1. On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. Docket Entry No. 14-35. Once again, the Tennessee Supreme Court denied petitioner's Rule 11 application for additional review. Docket Entry No. 14-39.

## II. Procedural History

On June 26, 2015, the petitioner initiated this action with the filing of a petition (Docket Entry No. 1) for writ of habeas corpus. Upon its receipt, the Court reviewed the petition and determined that the petitioner had stated a colorable claim for relief. Rule 4, Rules - - - § 2254 Cases. Accordingly, the respondent was directed to file an answer, plead or otherwise respond to the petition. Docket Entry No. 10.

Before the respondent could file an answer, counsel for petitioner filed an amended habeas corpus petition. Docket Entry No. 13. The petition, as amended, contains twelve (12) claims for relief. These claims include :

> 1) trial counsel provided the petitioner with ineffective assistance when

2

    a) counsel failed to present evidence of petitioner's
     Fetal Alcohol Spectrum Disorder (FASD) and
     other mental shortcomings; at pg. 13
    b) counsel provided faulty advice that led the petitioner
     to forego her right to testify; at pg. 18
    c) counsel failed to present evidence of petitioner's
     sexual, emotional and physical abuse; at pg. 20
    d) counsel neglected to investigate the petitioner's family
     background and history of mental problems; at pg. 21
    e) counsel failed to retain a mental health expert qualified
     to conduct "an adequate forensic evaluation" of the
     petitioner; at pg. 22
    f) counsel did not include all relevant issues for review
     in their motion for new trial or and on direct appeal
     of the convictions;[1] at pg. 27

  2)  the prosecution was unable to prove that the petitioner had the
     requisite mens rea to kill, thus rendering the evidence insufficient
     to sustain the murder and robbery convictions; at pg. 16

  3)  the petitioner is actually innocent of first degree murder; at pg. 17

  4)  appellate counsel was ineffective for failing to challenge the
     jury instruction defining reasonable doubt; at pg. 28

  5)  the reasonable doubt instruction was unconstitutional; at pg. 28

  6)  the mandatory minimum life sentence is unconstitutional; at pg. 29,
     and

  7)  the post-conviction court erred when it failed to consider
     petitioner's claim for *coram nobis* relief. at pg. 30.

  Presently before the Court is the respondent's Answer (Docket Entry No. 15) to the amended petition, to which the petitioner has offered no reply.

  Having carefully considered the amended petition, respondent's Answer and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* <u>Schriro v. Landrigan</u>,

---

[1] At both trial and on direct appeal, the petitioner was represented by Richard McGee and Wendy Tucker Jones, members of the Davidson County Bar.

550 U.S. 465, 474 (2007). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) Post-Conviction Claim**

The petitioner asserts that the post-conviction court erred when it failed to consider her claim for *coram nobis* relief (Claim No. 7).

A state is not constitutionally required to provide convicted felons with a means by which they can collaterally attack their convictions. Pennsylvania v. Finley, 107 S.Ct. 1990, 1994 (1987). Thus, a federal writ of habeas corpus will not issue when the petitioner is merely challenging errors or deficiencies related to a state post-conviction proceeding. Kirby v. Dutton, 794 F.2d 245 (6th Cir. 1986).

In this instance, any alleged error that occurred during petitioner's post-conviction proceedings does not implicate a constitutional violation that led to her convictions. Therefore, this claim is not cognizable in a federal habeas corpus action.

**B.) Actual Innocence**

The petitioner alleges as a free-standing claim that she is actually innocent of the crimes (Claim No. 3) despite the fact that she has never denied shooting the victim. Docket Entry No. 13 at pg. 9.

In order to sustain a claim for federal habeas corpus relief, the petitioner must set forth factual allegations suggesting that the fact or duration of her incarceration is in some way constitutionally defective. 28 U.S.C. § 2254(a); Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).

"A claim of actual innocence is not itself a constitutional claim, but instead a gateway

through which a habeas petitioner must pass to have an otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404 (1993). Thus, a free-standing claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review. *Id.* at 506 U.S. 400; Cress v. Palmer, 484 F.3d 844, 854-55 (6th Cir. 2007).

**C.) Procedurally Defaulted Claims**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in her petition. 28 U.S.C. § 2254(b)(1).

While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present her federal claims to every available level of the state court system. Rose v. Lundy, 455 U.S. 509, 518-20 (1982); Lyons v. Stovall, 188 F.3d 327, 331 (6th Cir. 1999). The petitioner must offer the state courts both the factual and legal bases for her claims. Hicks v. Straub, 377 F.3d 538, 552 (6th Cir. 2004). In other words, the petitioner must present "the same claim under the same theory" to the state courts. *Id.* It is not enough that all the facts necessary to support a federal claim were before the court or that the petitioner made a somewhat similar state law claim. Anderson v. Harless, 459 U.S. 4, 6 (1982).

Once petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990). In Tennessee, a petitioner need only take her claims

to the Tennessee Court of Criminal Appeals in order to fully exhaust available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also* Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

Five of the petitioner's claims have never been raised in the state courts for consideration during either direct appeal (Docket Entry No. 14-21) or during post-conviction proceedings (Docket Entry No. 14-32). These claims include the ineffectiveness of trial counsel for failure to present evidence of petitioner's sexual, emotional and physical abuse (Claim No. 1c); counsels' failure to retain a mental health expert qualified to conduct an adequate forensic evaluation (Claim No. 1e); counsels' failure to include all relevant issues for appellate review (Claim No. 1f); the legality of the reasonable doubt instruction to the jury (Claim No. 5); and appellate counsel's failure to challenge the reasonable doubt instruction (Claim No. 4).

Unfortunately, at this late date, it appears that the petitioner is no longer able to raise these claims in the state courts. *See* Tenn. Code Ann. § 40-30-102(a) and (c). Therefore, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to these particular claims. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim *via* procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of a federal constitutional issue forfeits the right to federal review of that issue, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional

violation. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, she must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with her ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

In her amended petition, the petitioner asserts that she has cause for and was prejudiced by any procedural default owing to the ineffectiveness of trial, appellate and/or post-conviction counsel, and that the failure to address procedurally defaulted claims will result in a miscarriage of justice. Docket Entry No. 13 at pg. 32.

The ineffectiveness of counsel can, in certain instances, constitute cause for a procedural default. *See* Martinez v. Ryan, 132 S.Ct. 1309 (2012).[2] It is noted, however, that the failure of counsel "to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir. 2004); *see also* Jones v. Barnes, 463 U.S. 745 (1983)(no constitutional duty to raise every non-frivolous issue requested by the petitioner). The petitioner has made no such showing with regard to the defaulted claims. Nor has the petitioner done anything

---

[2] The ineffectiveness of appellate counsel may constitute cause for a procedural default, but only if the ineffective assistance claim was not itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 453 (2000). Claim Nos. 1f and 4, alleging failure to appeal certain issues, have been procedurally defaulted and can not provide a basis for cause.

7

more than assert a conclusory claim of prejudice.

Even in the absence of cause and prejudice, though, a procedurally defaulted claim can still be reviewed if the failure to do so would result in a fundamental miscarriage of justice, Coleman v. Thompson, 501 U.S. 722, 750 (1991), i.e., the conviction of one who is actually innocent. Gibbs v. United States, 655 F.3d 473, 477 (6th Cir. 2011). By petitioner's own acknowledgment, she does not deny shooting the victim to death. Docket Entry No. 13 at pg. 9. Thus, a miscarriage of justice is not indicated in this instance. As a consequence, the petitioner has failed to demonstrate that the procedural default of these claims should be excused. Teague v. Lane, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the federal claim was not raised in the state appellate courts for review).

On post-conviction review, the Tennessee appellate court found that petitioner's ineffective assistance claim alleging counsels' failure to investigate the defendant's family background and history of mental problems (Claim No. 1d) had been waived because it had not been raised in the trial court. Docket Entry No. 14-35 at pg. 12.

When a state court rejects a habeas petitioner's claim pursuant to an independent and adequate procedural ground, that claim has been procedurally defaulted. Baze v. Parker, 371 F.3d 310, 320 (6th Cir.2004). Tennessee's waiver rule constitutes an adequate and independent state law rule precluding habeas corpus relief. Hutchinson v. Bell, 303 F.3d 720, 738 (6th Cir.2002). Therefore, federal habeas corpus review of this claim is barred absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

As noted above, the petitioner has shown neither cause nor prejudice sufficient to excuse the procedural default of this claim. Therefore, this claim will not provide the petitioner with a basis for

federal habeas corpus relief.

**D.) Fully Exhausted Claims**

The petitioner's remaining claims, i.e., the ineffectiveness of counsel (Claim Nos. 1a and 1b), the sufficiency of the evidence (Claim No. 2) and the legality of petitioner's mandatory minimum life sentence (Claim No. 6) were fully exhausted on either direct appeal or during post-conviction proceedings and were found to be lacking in merit.

The availability of federal habeas corpus relief is limited with regard to claims that have been previously adjudicated on the merits in state court. Harrington v. Richter, 562 U.S. 86, 92 (2011). When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. *Id.* at 529 U.S. 413. In short, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, *supra* at 562 U.S. 103.

**Ineffective Assistance of Counsel**

The petitioner claims that her attorneys were ineffective because they failed to present evidence of her Fetal Alcohol Spectrum Disorder (FASD) and other mental shortcomings (Claim No. 1a), and provided her with faulty advice that led her to forego the right to testify (Claim No. 1b).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. Missouri v. Frye, 132 S.Ct. 1399, 1404 (2012). To establish a violation of this right, the petitioner bears the burden of pleading and proving that her attorneys' performance was in some way deficient *and* that the defense was prejudiced as a result of the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984).

A deficiency occurs when counsel has acted in a way that falls below an objective standard of reasonableness under prevailing professional norms. *Id.* at 466 U.S. 688. Prejudice arises when there is a reasonable probability that, but for counsels' error, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. Where the issue is one of ineffective assistance of counsel, review under the Anti-Terrorism and Effective Death Penalty Act is "doubly deferential", Cullen v. Pinholster, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, *supra* at 466 U.S. 690.

While counsel were discussing with the petitioner whether she should testify, the petitioner was told that the prosecution could impeach her with testimony she gave at a juvenile transfer hearing.[3] Docket Entry No. 14-28 at pg. 30. For various reasons, counsel recommended that the

---

[3] At the time of the crime, the petitioner was only 16 years old. A transfer hearing was conducted in Juvenile Court to determine whether she would be tried as an adult.

petitioner not take the witness stand. The advice pertaining to the use of testimony from the juvenile transfer hearing turned out to be an incorrect reading of state law. *See* Tenn. Code Ann. § 37-1-134(f)(1)("Statements made by the child at the juvenile court hearing under this section are not admissible against the child, over objection, in the criminal proceedings following the transfer"). The petitioner chose not to testify. Docket Entry No. 14-2. She now alleges that she relied on the misinformation about impeachment testimony and waived her right to testify. She contends that counsel was ineffective for misstating the law and convincing her not to testify in her own defense.

Both attorneys for the defense testified at a post-conviction evidentiary hearing. They acknowledged having a number of conversations about whether the petitioner should take the witness stand. Docket Entry No. 14-30 at pg. 113. Both testified that they recommended not taking the witness stand because they were concerned that the petitioner would lose control of her temper. Docket Entry No. 14-28 at pg. 102; Docket Entry No. 14-30 at pg. 111.

The petitioner was vulnerable to impeachment based upon inconsistent statements, her juvenile record and infractions during her pre-trial confinement. The defense strategy was premised upon a theory of self-defense and witnesses were produced in support of that theory without the testimony of the petitioner. The state courts concluded that counsel had not been ineffective for recommending that the petitioner not testify for those reasons. Docket Entry No. 14-35 at pgs. 11-12. This Court finds that the denial of this claim by the state courts was neither contrary to nor an unreasonable application of federal law.

It has also been asserted that counsel were ineffective for failing to present evidence of petitioner's Fetal Alcohol Spectrum Disorder (FASD) and other mental shortcomings.

Both attorneys for the defense realized that the petitioner was very intelligent. Docket Entry

11

No. 14-28 at pg. 84; Docket Entry No. 14-30 at pg. 105. Nevertheless, a thorough review of her medical records indicated that she had behavioral problems. The defense obtained the services of an investigator. Docket Entry No. 14-28 at pg. 74. A forensic psychologist, Dr. Bernet, was retained to evaluate the possibility of a diminished capacity defense. Docket Entry No. 14-30 at pg. 106. Dr. Bernet had access to all of the previous evaluations of the petitioner's mental health. He interviewed and tested the petitioner. While Dr. Bernet found that the petitioner had a personality disorder, he never suggested that she suffered from Fetal Alcohol Spectrum Disorder.[4] Docket Entry No. 14-20 at pgs. 13-20. In fact, that diagnosis was not made until August, 2012, six years after trial. Docket Entry No. 1 at pg. 8.

A mental health expert did not diagnose the petitioner with FASD. An attorney in Tennessee is not required to question the diagnosis of a mental health expert. Docket Entry No. 14-35 at pg. 12. A diminished capacity defense was considered and ultimately rejected because there were too many negatives about the petitioner that would have been revealed to the jury. Docket Entry No. 14-30 at pg. 108. In light of these circumstances, the state courts did not violate federal law by finding that counsel had not been ineffective in this regard.

### Sufficiency of the Evidence

The petitioner argues that the evidence was insufficient to support her convictions because her diminished mental capacity made it impossible for her to form the requisite *mens rea* to commit the crimes (Claim No. 2).

The right to due process guaranteed by the Constitution insures that no person will be made

---

[4] FASD is the destruction of brain cells *in utero* caused by a mother's alcohol abuse during pregnancy.

to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 99 S.Ct. 2781, 2787 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.,* 99 S.Ct. at 2789.

It is the responsibility of the jury, not the court, to decide what conclusions should be drawn from evidence admitted at trial. Cavazos v. Smith, 132 S.Ct. 2,4 (2011). For that reason, within the context of a sufficiency of the evidence claim, a court need only answer "whether that finding was so unsupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012).

According to the evidence, the victim picked the petitioner up at a local drive through restaurant. He took her to his home, apparently intending to have sex with her. She spent a good deal of time stalling the victim. Finally, they laid down together. In a statement to the police, the petitioner denied having sex with the victim. She told them "I didn't think the dude was gonna do somethin', he seemed like a pretty nice guy." Docket Entry No. 14-6 at pg. 26. Nevertheless, the petitioner claims that she felt threatened by him and shot the victim as he laid in the bed with a pistol she had in her purse.

The petitioner admitted to the police that the victim never had a gun in his hand. *Id.* at pg. 37. She got up and dressed, before taking cash from the victim and some rifles he owned. The petitioner grabbed the victim's keys to his truck and drove to a nearby Wal-Mart parking lot where she abandoned the truck. She got a ride from a stranger to a room at a motel that she was sharing with a male companion.

The petitioner admitted to shooting the victim. She told her mother in a telephone conversation that she had "executed" the victim. Docket Entry No. 14-15 at pg. 75. The petitioner told a nurse at the pre-trial confinement center that "I shot that man in the back of the head one time, bitch, I'm gonna shoot you in the back of the head three times. I'd love to hear your blood splatter on the wall." Docket Entry No. 14-12 at pg. 23. A fellow inmate testified " ... she basically said she shot the man just to see how it felt to kill somebody." Docket Entry No. 14-13 at pg. 26.

As noted above, the theory of self-defense was put forth on the petitioner's behalf. Two women (Jessica Snider and Sandra Liggett) testified that the victim was rather "creepy" with one of them stating that the victim actually raped her in his home. Dr. Bernet's evaluation did not support a finding that the petitioner was incapable of forming the *mens rea* needed to commit the crimes. Moreover, in an evaluation of the petitioner conducted at the Western Mental Health Institute, staff determined that the petitioner "does not have a mental illness that requires treatment in a psychiatric hospital. Docket Entry No. 14-20 at pg. 26.

From this, any reasonable juror could find that the petitioner had formed the *mens rea* needed to commit these crimes. Therefore, this claim has no merit.

### Legality of the Mandatory Minimum Life Sentence

Finally, the petitioner contends that her mandatory minimum sentence of life imprisonment constitutes the type of cruel and unusual punishment prohibited by the Constitution (Claim No. 6).

At the time of her offenses, the petitioner was a minor. In support of this claim, the petitioner cites to Miller v. Alabama, 132 S.Ct. 2394 (2012), which stands for the proposition that a mandatory sentence of life *without* the possibility of parole for juvenile offenders is cruel and unusual.

The state courts, though, correctly noted that the petitioner was sentenced to life

imprisonment with the possibility of parole, thus rendering the Miller decision inapplicable to this case. There is no controlling case law that recognizes that the petitioner's life sentence, as it currently stands, is violative of the Constitution, Therefore, the Court finds no merit in this claim.

Having found no claims warranting relief, an appropriate order will be entered.

_____
John T. Nixon
Senior District Judge