UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CYNTOIA BROWN, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | NO. 3:15-cv-00712 |
| | ) | CHIEF JUDGE CRENSHAW |
| CAROLYN JORDAN, | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Before the Court are Petitioner Cyntoia Brown's Motion to Alter or Amend Judgment (Doc. No. 27) under Federal Rule of Civil Procedure 59(e) ("Rule 59 motion") and Request for Certificate of Appealability (Doc. No. 30). On February 24, 2017, then-Chief Judge Kevin H. Sharp denied the motions, finding that Brown's subsequently-filed Notice of Appeal (Doc. No. 29) divested the Court of jurisdiction to consider the motions. (Doc. No. 38.) The Sixth Circuit Court of Appeals disagreed, and remanded to resolve the motions. (Doc. No. 41.)

## I. BACKGROUND

Brown—then sixteen years old—was tried as an adult, and a Davidson County jury convicted her of first degree premeditated murder, first degree felony murder, and especially aggravated robbery. State v. Brown, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *1 (Tenn. Crim. App. Nov. 6, 2014) (citing State v. Brown, No. M2007-00427-CCA-R3-CD, 2009 WL 1038275, at **34-35 (Tenn. Crim. App. Apr. 20, 2009)). The court merged the murder convictions and sentenced her to a mandatory statutory minimum of life imprisonment. Id. (citing State v. Brown, 2009 WL 1038275, at *35). The Tennessee Court of Criminal Appeals affirmed Brown's murder convictions and the Tennessee Supreme Court denied Brown's application for

permission to appeal. Id. at **1-2 (citing State v. Brown, 2009 WL 1038275, at *3). The Davidson County Criminal Court denied Brown's petition for post-conviction relief, the Tennessee Court of Criminal Appeals affirmed, and the Tennessee Supreme Court denied Brown's application for permission to appeal. Id. at *1, perm. app. denied May 15, 2015.

On June 26, 2015, Brown filed a Petition for a Writ of Habeas Corpus (Doc. No. 1) under 28 U.S.C. § 2254. On September 24, 2015, Brown filed an Amended Petition for a Writ of Habeas Corpus (Doc. No. 13) under 28 U.S.C. § 2254, raising the following claims of ineffective assistance of counsel: (1) trial and appellate counsel's failure to present evidence of Brown's Fetal Alcohol Spectrum Disorder ("FASD")[1]; (2) trial counsel's failure to provide correct legal advice, causing her to forego exercising her right to testify at trial; (3) trial counsel's failure to present evidence of Brown's history of sexual, emotional, and physical abuse; (4) trial counsel's failure to present evidence of Brown's family's mental health history; (5) trial counsel's failure to retain an expert qualified to conduct an adequate mental health evaluation; (6) trial counsel's failure to raise relevant issues in a motion for a new trial (including their failures that form the basis of the claims of ineffective assistance of counsel in the amended petition, Brown's actual innocence, and her FASD) ; and (7) trial and appellate counsel's failure to challenge the "reasonable doubt" jury instruction because it understated the burden of proving guilt beyond a reasonable doubt. Brown also raised separate claims of (1) insufficiency of the evidence; (2) actual innocence; (3) application of an unconstitutional jury instruction on "reasonable doubt;" (4) imposition of an

---

[1] "Fetal Alcohol Spectrum Disorder is an umbrella term that has been adopted to cover all prenatal alcohol-induced impairments including Alcohol Related Neuro-developmental Disorder (ARND), Fetal Alcohol Effects (FAE), and Fetal Alcohol Syndrome [FAS]." Christopher Fanning, Defining Intellectual Disability: Fetal Alcohol Spectrum Disorders and Capital Punishment, 38 Rutgers L. Rec. 1, 11 (2010) (footnotes omitted). Dr. Richard Adler, a clinical and forensic psychologist, "concluded that [Brown] suffered from ARND," and that she "was born with the disorder and was suffering from it when she shot the victim." State v. Brown, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *6 (Tenn. Crim. App. Nov. 6, 2014). Dr. Adler based this assessment on physical, neuropsychological, and background testing performed in June 2011. Id. The Tennessee Court of Criminal Appeals capably summarized the testimony regarding Brown's mental disease. See id. at **6-11.

2

unconstitutional mandatory minimum life sentence; and (5) failure of the post-conviction court to properly consider her for coram nobis relief. Respondent filed an answer, asserting that Brown's claims are either procedurally defaulted or meritless. (Doc. No. 15 at 32.)

On October 28, 2016, Senior District Judge John T. Nixon denied Brown's amended petition and declined to issue a certificate of appealability ("COA"). (Doc. No. 26.) Specifically, Judge Nixon found non-cognizable Brown's free-standing claim for actual innocence and her claim that the post-conviction court failed to properly consider her for coram nobis relief. (Doc. No. 25 at 4-5.) Judge Nixon found the following claims for ineffective assistance of trial counsel to be procedurally defaulted: failure to present evidence of Brown's past abuse, failure to retain an expert qualified to conduct an adequate mental health evaluation, failure to raise the relevant issues in a motion for a new trial, and failure to present evidence of her family's mental health history. (Id. at 6, 8.) Judge Nixon also found to be procedurally defaulted Brown's claims for an unconstitutional "reasonably doubt" jury instruction and ineffective assistance of counsel for failure to challenge the "reasonable doubt" instruction. (Id.)

Judge Nixon also found Brown's four remaining claims to be without merit. First, Brown argued that trial counsel was ineffective for providing incorrect legal advice that caused her to forego exercising her right to testify at trial. (Doc. No. 13 at 18-20.)[2] Brown's trial counsel erroneously advised Brown that the prosecution could impeach her on cross examination using testimony from a juvenile transfer hearing. See Tenn. Code Ann. § 37-1-134(f)(1) ("Statements made by the child at the juvenile court hearing under this section are not admissible against the

---

[2] "To demonstrate that [her] counsel was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), [Brown] must make two showings: (1) [her] counsel's performance was deficient, or put differently, fell below an objective standard of reasonableness; and (2) the performance prejudiced [Brown]." King v. Westbrooks, 847 F.3d 788, 795 (6th Cir. 2017) (citing United States v. Mahbub, 818 F.3d 230-31 (6th Cir. 2016)) (internal quotation marks omitted).

3

child, over objection, in the criminal proceedings following the transfer.") The state court denied this claim because trial counsel had other reasons for advising Brown not to testify—concern that she would lose her temper, vulnerability to impeachment, and because her self-defense theory was adequately presented without her testimony. Judge Nixon found that the state court's ruling was "neither contrary to nor an unreasonable application of federal law." (Doc. No. 25 at 11.)

Second, Brown argued that her trial and appellate counsel were ineffective for failing to present evidence of FASD. (Doc. No. 13 at 13-16.) The state court denied this claim because trial counsel thoroughly investigated the case and referred Brown to forensic psychiatrist Dr. William Bernet, who did not diagnose Brown with FASD. The state court noted that Brown's counsel were not required to question Dr. Bernet's diagnosis, and that trial counsel decided not to present a diminished capacity defense because it would have revealed negative aspects of Brown to the jury. Judge Nixon held that "the state courts did not violate federal law by finding that counsel had not been ineffective in this regard." (Doc. No. 25 at 12.)

Third, Brown argued that the evidence at trial was not sufficient to support her first degree murder and felony murder convictions because the state failed to establish beyond a reasonable doubt that Brown had the required mental state. (Doc. No. 13 at 16-17.)[3] Judge Nixon summarized the evidence at trial and concluded that "any reasonable juror could find that [Brown] had formed the mens rea needed to commit these crimes." (Doc. No. 25 at 14.)

Fourth, Brown argued that her mandatory minimum life sentence is unconstitutional in light of recent Supreme Court rulings, including Miller v. Alabama, 132 S.Ct. 2455 (2012), because the sentencing statute did not properly account for her status as a juvenile when she was

---

[3] "On a sufficiency-of-the-evidence claim, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Tanner v. Yukins, No. 15-1691, 2017 WL 3481867, at *9 (6th Cir. Aug. 15, 2017) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

4

sentenced at the age of sixteen. (Doc. No. 13 at 29-30.) The state court found that Miller does not apply because Brown was sentenced to life with the possibility of parole. Judge Nixon denied Brown's claim because "[t]here is no controlling case law that recognizes that [Brown's] life sentence, as it currently stands, is violative of the Constitution." (Doc. No. 25 at 15.)

## II. RULE 59 MOTION

In her Rule 59 motion, Brown requests that the Court alter or amend its judgment to prevent manifest injustice. (Doc. Nos. 27 and 28.) Brown argues that, rather than deny her claims as non-cognizable or procedurally defaulted, the Court should excuse any procedural default and reconsider the claims on the merits because she is actually innocent and experienced ineffective assistance of her trial and appellate counsel. (Doc. No. 28 at 4-8, 11-16.)

"[A] motion under Rule 59(e) 'must either clearly establish a manifest error of law or must present newly discovered evidence." Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 395 (6th Cir. 2007) (quoting F.D.I.C. v. World Univ. Inc., 978 F.2d 10, 16 (6th Cir. 1992)). "[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." Id. (citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998)). It is well established that a motion under Rule 59(e) "is not an opportunity to re-argue a case." Sault Ste. Marie, 146 F.3d at 374 (citing FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)). "[A]lthough the 'manifest injustice' ground for a Rule 59(e) motion appears to be a catch-all provision, it is not meant to allow a disappointed litigant to attempt to persuade the Court to change its mind." Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 809 (N.D. Ohio Mar. 31, 2010) (citing GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)).

5

Here, Brown's Rule 59 motion presents the same arguments that Judge Nixon considered and rejected. As to actual innocence, Brown contends that she was incapable of forming the requisite mens rea to commit the crimes for which she was convicted because physical, neuropsychological, and background testing in June 2011 revealed mental illness, brain dysfunction, and neurological impairment. (Doc. No. 28 at 7-8.) She argues that these findings constitute newly discovered evidence that, if available at the time of her trial, would have made it "more likely than not that *any* reasonable juror would *have* reasonable doubt about her guilt." (Id. at 8 (referencing Schlup v. Delo, 513 U.S. 298, 327-30 (1995)).) As an initial matter, the June 2011 testing is not evidence that was newly discovered after Judge Nixon's ruling because Brown carefully detailed the tests in the amended petition that Judge Nixon denied on October 28, 2016. (Doc. No. 26.) Judge Nixon considered Brown's argument that her FASD prevented her from forming the required mens rea to commit the crimes for which she was convicted, summarized the evidence at trial, and concluded that "any reasonable juror could find that [Brown] had formed the *mens rea* needed to commit these crimes." (Doc. No. 25 at 12-14.)

As to ineffective assistance of counsel, Brown contends that her trial attorneys were objectively unreasonable in failing to present evidence on her FASD and providing inaccurate legal advice that caused her to forego her right to testify at trial, and that this failure affected the outcome of the trial. (Id. at 11-16.) Judge Nixon also directly rejected these arguments, finding that the state court's denial of these claims was not an unreasonable application of federal law. (Doc. No. 25 at 10-12.)

Although this case has now been before three different judges, Brown has not demonstrated that the Court should "change its mind" and reconsider the merits of the previously-dismissed

6

claims. See Lonardo, 706 F. Supp. at 809 (citing GenCorp, Inc., 178 F.3d at 834). Accordingly, the Court will deny Brown's Rule 59 motion (Doc. No. 27).

### III. CERTIFICATE OF APPEALABILITY

Judge Nixon declined to issue a certificate of appealability because Brown did not make a substantial showing that her constitutional rights were denied. (Doc. No. 26.) The Court therefore construes Brown's Request for Certificate of Appealability (Doc. No. 30) as a motion to reconsider Judge Nixon's denial of a COA. Brown requests a COA on the following four issues: (1) whether her mandatory minimum life sentence is unconstitutional; (2) whether she was actually innocent because she was incapable of forming the requisite mens rea to commit the crimes for which she was convicted; (3) whether her trial and appellate counsel were ineffective for failing to investigate and present evidence on her FASD; and (4) whether her trial counsel was ineffective for causing her to forego her right to testify at trial due to inaccurate advice. (Doc. No. 30.) Respondent did not file a response to Brown's request for a COA.

Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

First, Brown argues that her life sentence is unconstitutional because the sentencing court did not properly consider Brown's juvenile status as required by Miller v. Alabama, 567 U.S. 460 (2012). (Doc. No. 30 at 3-9.) Miller directly addressed only "mandatory life-without-parole

7

sentences" for juveniles. 567 U.S. at 479. Brown, however, argues that her 51-year mandatory minimum term is a "de facto life sentence" (Doc. No. 30 at 4-5), and that it would still be unconstitutional even if she "could possibly be geriatrically released from prison at some point before the conclusion of her life . . . ." (Id. at 6.) The Sixth Circuit recently found that the application of the same Tennessee statute to another juvenile was neither contrary to nor an unreasonable application of federal law. (Id. at 8 (citing Starks v. Easterline, 659 F. App'x 277, 280-81 (6th Cir. 2016)).) Yet, the Court also stated:

> As [the Supreme Court's] line of jurisprudence [on "draconian sentences imposed upon juveniles"] continues to evolve, it may well be that the Court one day holds that fixed-term sentences for juvenile offenders that are the functional equivalent of life without parole are unconstitutional, especially if the sentencing court has not taken the defendant's youth into consideration. That said, it is not our role to predict future outcomes.

Starks, 659 F. App'x at 280-81. Indeed, in her concurrence, Judge Helen White wrote that the defendant's sentence violated the Eighth Amendment, but that he was not entitled to relief because his sentence fell "in a gray area that raises the question whether release eligibility at an age nearing a defendant's life expectancy violates clearly established law." Id. at 284. In light of this guidance, the Court will grant a COA on this issue because a reasonable jurist could conclude that the issues presented are adequate to deserve encouragement to proceed further.

Second, Brown argues that the June 2011 testing revealed new evidence that was not available at trial—namely, that she suffered from the effects of FASD as a result of her biological mother drinking significant amounts of alcohol while Brown was in utero. (Doc. No. 30 at 10-11 (citing Brown, 2014 WL 5780718, at *6).) Brown argues that this evidence "virtually eliminates any possibility that [Brown] was capable of forming the mens rea required to have committed the crime of which she was accused." (Id. at 11.) Given this evidence, the Court concludes that a reasonable jurist could disagree with the Court's holding that "any reasonable juror could find that

8

[Brown] had formed the *mens rea* needed to commit these crimes." (Doc. No. 25 at 12-14.)

Finally, the Court will not grant a COA for the Court's rulings on Brown's claims of ineffective assistance of counsel. Brown has not made the "substantial showing" that her counsel was deficient for failing to present evidence on her FASD, nor has she made the "substantial showing" that she suffered prejudice because her counsel caused her to forego her right to testify at trial due to inaccurate advice. 28 U.S.C. § 2253(c)(2); see King, 847 F.3d at 795. Accordingly, Brown's Request for Certificate of Appealability (Doc. No. 30) will be granted in part and denied in part.

## IV. CONCLUSION

For the reasons discussed above, Brown's Rule 59 motion (Doc. No. 27) requesting that the Court reconsider her claims on the merits is **DENIED**. Brown's Request for Certificate of Appealability (Doc. No. 30) requesting that the Court reconsider Judge Nixon's denial of a COA is **GRANTED IN PART** and **DENIED IN PART**. Brown's Motion Requesting Oral Argument (Doc. No. 42) is **DENIED AS MOOT**. The Court issues a certificate of appealability on the following two claims:

(1) whether Brown's mandatory minimum life sentence is unconstitutional;

(2) whether Brown was actually innocent because she was incapable of forming the requisite mens rea to commit the crimes for which she was convicted.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE